IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>VEANIUA VEHIKITE,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S AMENDED MOTION TO SUPPRESS<br><br><br><br>Case No. 2:12-CR-533 TS |

This matter comes before the Court on Defendant's Amended Motion to Suppress.[1] Defendant seeks to suppress evidence found and statements made to police officers during a traffic stop that occurred on January 15, 2012, and all evidence obtained during a February 9, 2012 traffic stop. For the reasons set forth below, the Court will deny Defendant's Motion.

I. JANUARY 15, 2012, STOP

A. FINDINGS OF FACT

On January 15, 2012, at approximately 8:00 p.m., Officer Jacob Hill of the West Valley City Police Department was on patrol near a group of hotels at 2200 West 3500 South in West

---

[1]Docket No. 18.

1

Valley City. He considered this to be a high crime area. Officer Hill ran the license plate of an SUV that left one of the hotels, and found that it was listed as not having insurance. He also noticed that the vehicle had a non-operating left taillight. Based upon these two violations, Officer Hill conducted a traffic stop of the vehicle. As Officer Hill approached the vehicle, he noticed that it contained five occupants and a pit bull. He recognized some of the occupants as individuals who frequently engage in criminal activity.

The driver, who was a known criminal named Daniel Ferry, had no identification or driver's license. Officer Hill also found it suspicious that only one individual in the vehicle had any form of identification. Officer Hill called for backup to help conduct a state tax impound and inventory of the vehicle. A total of three other officers arrived to assist, including West Valley City Police Officers Chow and Palmer.

While Officer Hill was running a warrants check on the occupants, Officer Chow was standing by the front passenger door of the car. Defendant attempted to get out of the front passenger door, but Officer Chow shut the door, telling Defendant "you're not getting out of the vehicle." Shortly thereafter, Officer Chow found a cigarette package on the ground near Defendant's door that contained small plastic baggies of the type commonly used to package narcotics.

Officer Hill located warrants for the arrest of some of the five occupants, including warrants for theft and drug paraphernalia. He also found that some of the occupants—including Defendant—had criminal histories for involvement in narcotics and violence.

About ten minutes after initiating the traffic stop, Officer Hill had the driver exit the vehicle and then went to the passenger side with Officers Chow and Palmer to have the others exit. As Defendant exited the vehicle, the police officers noticed a backpack on the floor near Defendant's feet. The police observed a digital scale with white residue on it through a mesh exterior pocket on the side of the backpack. The officers believed the scale to be drug paraphernalia for use in drug transactions. Immediately after Defendant exited the vehicle, Officer Palmer asked if the backpack was Defendant's, and he replied that it was. Officer Palmer then asked if there was anything else illegal in the backpack, and Defendant replied that there were probably drugs in it. Defendant was not read his *Miranda* rights before Officer Palmer asked these questions.

Officer Palmer then searched the backpack and found more small baggies, some pills, and a magazine for a firearm.

B.  DISCUSSION

Defendant argues that his statements and the contents of his backpack should be suppressed because (1) Officer Palmer was required to advise Defendant of his *Miranda* rights and (2) the search of Defendant's backpack was illegal.

   *1.*   Miranda

"*Miranda* rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.'"[2]  By its terms, *Miranda* applies

---

[2]*United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008) (quoting *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008)).

whenever "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[3] "It must be acknowledged that a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers . . . of the vehicle."[4] Nevertheless, "*Miranda* warnings are . . . not implicated in the context of a valid *Terry* [*v. Ohio*] [traffic] stop"[5] because traffic stops are ordinarily "brief, non-threatening, and conducted in the presence of others."[6] "Where, however, the traffic stop is effectuated using a level of force that 'reache[s] the boundary line between a permissible *Terry* stop and an unconstitutional arrest,' *Miranda* warnings may be required."[7]

"The determination of custody, from an examination of the totality of the circumstances, is necessarily fact intensive."[8] Additionally, "[w]hether a suspect is in custody represents an objective determination."[9] In making this determination in the context of a *Terry* traffic stop, courts consider the following factors: (1) whether and to what extent the defendant is told that he

---

[3]*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[4]*Berkemer v. McCarty*, 468 U.S. 420, 436 (1984).

[5]*United States v. Raynor*, 108 F. App'x 609, 613 (10th Cir. 2004) (unpublished) (alterations in original) (internal citation omitted).

[6]*United States v. White*, 339 F. Supp. 2d 1165, 1175 (D. Kan. 2004) (citing *Berkemer*, 468 U.S. at 438–39)).

[7]*Raynor*, 108 F. App'x at 613 (alteration in original) (quoting *United States v. Perdue*, 8 F.3d 1455, 1464 (10th Cir. 1993)).

[8]*United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993).

[9]*Jones*, 523 F.3d at 1239.

4

or she may refrain from answering questions;[10] (2) the tone and manner of the questioning, "where prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave;"[11] (3) the separation of the defendant from sources of moral support;[12] and (4) whether police dominate the encounter.[13]

In assessing whether an encounter is police dominated, courts consider

> the degree of restraint placed upon the suspect being questioned, including whether the suspect is physically restrained or coerced, threatening presence of several officers, whether the suspect's driver's license or automobile registration is retained, and whether there is a threat of physical restraint created by the officer's display of a weapon.[14]

In this case, although Defendant was not told that he was free to refrain from answering questions, the questioning itself was extremely brief. Additionally, although there were three police officers near Defendant when he was questioned, the officers did not physically restrain him, draw their weapons, withhold his identification or other belongings, or separate him from the other occupants of the vehicle who could provide moral support. It is true that Officer Chow shut Defendant's door and told him that he could not get out, but this reduction in freedom is

---

[10] *United States v. Torres-Guevara*, 147 F.3d 1261, 1266 (10th Cir.1998).

[11] *Griffin*, 7 F.3d at 1518.

[12] *Id.* at 1519.

[13] *See Berkemer*, 468 U.S. at 439–40.

[14] *United States v. Ortega*, 379 F. Supp. 2d 1177, 1186 (D. Kan. 2005) (internal citations omitted).

characteristic of a *Terry* traffic stop[15] and did not occur concurrently with the questioning. Finally, even though the darkness of night reduced the public's ability to observe the encounter, the traffic stop was public to some degree.[16] Considering the totality of the circumstances, the Court finds that the police did not effectuate the stop with a degree of force beyond that permissible in a *Terry* traffic stop, and Defendant was therefore not "entitled to the full panoply of protections prescribed by *Miranda*."[17]

Having determined that Defendant was not in custody at the time he answered Officer Palmer's questions about his backpack, the Court declines to consider whether the questioning constituted interrogation.

2.   *Search*

Defendant next argues that the warrantless search of his backpack was unlawful.

The Fourth Amendment requires the government to perform searches and seizures in a reasonable manner, which usually requires searches and seizures to be based on probable cause and executed pursuant to a warrant.[18] A search of a vehicle for contraband supported by probable

---

[15]*See Berkemer*, 468 U.S. at 436 ("It must be acknowledged at the outset that a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle. Under the law of most States, it is a crime either to ignore a policeman's signal to stop one's car or, once having stopped, to drive away without permission.").

[16]*See Berkemer,* 468 U.S. at 428.

[17]*Id.* at 440.

[18]U.S. Const. amend. IV; *see Katz v. United States*, 389 U.S. 347, 357 (1967) (imposing presumptive warrant requirement for searches and seizures).

6

cause is not unreasonable.[19] This automobile exception extends to any containers within the vehicle that police officers have probable cause to believe contain contraband.[20] More specifically, if the police have probable cause that the vehicle contains illicit drugs, officers may conduct a "warrantless search of the vehicle including every container found within the vehicle, locked or unlocked, that was capable of concealing drugs, drug paraphernalia, or drug dealing equipment."[21]

In this case, Defendant argues that the automobile exception does not apply because the backpack was outside of the vehicle at the time it was searched. The automobile exception, however, applies to containers "found in an automobile,"[22] and Defendant provides no authority for his assertion that the exception disappears when a container is taken out of a vehicle. Defendant's argument, therefore, must be rejected.

In this case, Officer Hill was conducting his patrol shift in a high crime area, watching hotels that were known to him as the locale of frequent criminal activity. Once Officer hill stopped the SUV for the insurance and taillight violations, his suspicions of criminal activity were almost immediately aroused when only one of the five occupants could produce photo identification. Further, during his routine checks, he found that some of the occupants had criminal histories for various criminal offenses including drugs, violence, and weapons

---

[19]*Carroll v. United States*, 267 U.S. 132, 160–62 (1925).

[20]*California v. Acevedo*, 500 U.S. 565, 579 (1991).

[21]*United States v. Howe*, 313 F. Supp. 2d 1178, 1185–86 (D. Utah 2003).

[22]*Acevedo*, 500 U.S., at 580.

possession, and that Defendant was a documented gang member with his own criminal convictions. Additionally, there were warrants for the arrest of some of the occupants, for retail theft and for drug paraphernalia. Then, Officer Chow located the cigarette pack with the drug packaging paraphernalia by the front passenger side of the car. As Defendant exited the vehicle, Officers Hill and Palmer saw in plain view a digital scale with white residue on it in the outside mesh pocket of a backpack at Defendant's feet. Finally, Defendant himself stated that the there were probably drugs in the backpack. Together these factors gave the officers probable cause to search the vehicle and all the containers therein, including Defendant's backpack, for narcotics and other evidence of criminal activity under the automobile exception.

## II. FEBRUARY 9, 2012, STOP

A.     FINDINGS OF FACT

On February 9, 2012, Unified Police Department Officer Denise Ikemiyashiro was working a patrol shift near 4015 West 5400 South in Salt Lake County. During the afternoon, her attention was drawn to a Ford Taurus that was stacked full of items all the way to the roof. She decided to follow the car, and noticed that the driver was swerving in between cars and changing lanes without first signaling for two seconds. Based upon this observed traffic violation, Officer Ikemiyashiro conducted a traffic stop. She approached the vehicle and identified the driver as Defendant.

B.     DISCUSSION

Defendant argues that Officer Ikemiyashiro lacked reasonable grounds to stop the vehicle Defendant was driving on February 9, 2012.

"A traffic stop is justified at its inception if an officer has (1) probable cause to believe a traffic violation has occurred, or (2) a reasonable articulable suspicion that a particular motorist has violated any of the traffic or equipment regulations of the jurisdiction."[23]

Utah law requires that a "signal of intention to turn right or left to change lanes . . . be given continuously for at least the last two seconds preceding the beginning of the movement."[24] The Court finds credible Officer Ikemiyashiro's testimony that she witnessed Defendant fail to signal for the full two seconds before changing lanes. Therefore, the Court finds that Officer Ikemiyashiro had probable cause to believe that a traffic violation occurred and the subsequent stop of Defendant's vehicle was reasonable.

### III. CONCLUSION

Based on the above, it is hereby

ORDERED that Defendant's Amended Motion to Suppress (Docket No. 18) is DENIED.

The time between the filing of Defendant's Motion to Suppress (Docket No. 15) and the date of this Order is hereby excluded for purposes of Speedy Trial Act calculation under 18 U.S.C. §§ 3161(h)(1)(D) & (H).

The Court will set a status conference by separate notice to establish a new trial date.

---

[23] *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009).

[24] Utah Code. Ann. § 41-6a-804(1)(b).

DATED February 22, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge